UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRENDON JANIS,<br><br>Defendant. | 5:17-CR-50076-JLV<br><br><br>REPORT AND RECOMMENDATION |

Pending is Defendant's Motion to Suppress (Doc. 45). A hearing was held on Wednesday, June 13, 2018. Defendant was personally present and represented by his attorney of record. The Government was represented by the Assistant United States Attorney Kathryn Rich. Five witnesses testified at the hearing. Nineteen exhibits were received into evidence. Post-hearing briefing concluded on November 29, 2018. Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress be granted in part and denied in part.

## JURISDICTION

Defendant is charged in a Superseding Indictment with Conspiracy to Distribute a Controlled Substance in violation of 18 U.S.C. §§ 846, 841(a)(1),

and 841(b)(1)(A), and Prohibited Person in Possession of Firearms, in violation of 18 U.S.C. § 922(g)(3).  The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Chief Judge Jeffrey L. Viken's Standing Order dated April 1, 2018.

### FACTS

FBI Special Agent Preston Patterson, South Dakota Division of Criminal Investigation Special Agent Dane Rasmussen, FBI Special Agent Dan Cooper, BIA Special Agent Justin Hooper, and Oglala Sioux Tribe Department of Public Safety Officer Jonathon Archambeau testified at the June 13, 2018 hearing. The court finds each witness credible and gleans the following from their testimony and exhibits received at the evidentiary hearing.

In September of 2015, the Northern Plains Safe Trails Drug Task Force began investigating Defendant Brendon Janis for distributing drugs in the Kyle, South Dakota area.  (Ex. 1 at Bates 000030–31; Doc. 88 at p. 5).  The task force operates with a small number of agents from the BIA, FBI, and Oglala Sioux Tribe, and primarily focuses on drug conspiracy investigations. (Doc. 88 at p. 6).  FBI Special Agent ("SA") Preston Patterson was a member of the Safe Trails Drug Task Force during the investigation into Brendon Janis, and he participated in that investigation.  (Id. at p. 4–5).

The task force began receiving information from concerned citizens regarding Mr. Janis' drug distribution in the Kyle area in September 2015, and continued the investigation by conducting interviews with fifteen sources of information (SOIs).  (Id. at p. 5–6, 14; Ex. 1 at Bates 000030–36).  Throughout

2

2016 and early 2017, the task force continued collecting information from the SOIs through proffer agreements and interviews. (Ex. 1 at Bates 000030–36). Various SOIs stated that Mr. Janis was the main methamphetamine dealer in the Kyle area, and provided other corroborating information. (Id.). The investigation indicated that Mr. Janis dealt meth out of his residence in Kyle. The task force concealed the SOIs' identities because they were either actively cooperating with law enforcement or did not wish to be identified. (Doc. 88 at p. 14). Identification of the SOIs could jeopardize this investigation or other ongoing investigations. (Id.).

SA Patterson testified that on March 22, 2017, the task force successfully conducted a controlled purchase of methamphetamine in Kyle through a confidential informant ("CI"). (Id. at p. 15–16). This controlled purchase took place at Mr. Janis' residence, #340 Kyle Housing. (Id.; Ex. 1 at Bates 000034–36). Based on the controlled purchase, SA Patterson informed other members of the Northern Plains Safe Trails Task Force that Mr. Janis was continuing to be involved with drug distribution activities. (Doc. 88 at p. 17; 4-7). SA Patterson and SA Dan Cooper compiled summaries of the various SOIs' background information and the recent controlled purchase into a search warrant for Mr. Janis' residence. (Id. at p. 9, 15–17).

On March 27, 2017, SA Patterson presented the application for the search warrant to the undersigned magistrate judge, together in a bundle with the probable cause affidavit, two attachments, and a motion and proposed

3

order to seal.[1]  (Id. at p. 12–13).  The application identified "Kyle Housing #340,

Kyle SD 57752" as the property to be searched, incorporated the affidavit, and

stated the search was related to a violation of 21 U.S.C. § 846, Conspiracy to

Distribute a Controlled Substance.  (Ex. 1 at Bates 000026).  The affidavit set

forth a ten-page summary of the investigation into Mr. Janis' meth distribution

activities, including interviews with all fifteen SOIs and the controlled

purchase.  (Id. at Bates 000027–36).  The affidavit identified which SOIs were

providing information pursuant to proffer agreements.  (Id.).  Attachment A

contained an image of #340 Kyle Housing.  (Id. at Bates 000038).  Attachment

B listed fourteen numbered paragraphs identifying items to be seized, including

a urinalysis sample from Mr. Janis.  (Id. at Bates 000039).  The magistrate

judge crossed off an item listed in Paragraph 13, and initialed that change.

(Id.).  The magistrate judge also made an initialed change to the proposed order

to seal.  (Id. at Bates 000041).  After placing SA Patterson under oath, the

magistrate judge found probable cause to authorize the search, and signed and

dated the application, the affidavit, the order to seal, and the search warrant.

(Id. at Bates 000026–42).

Like the application, the search and seizure warrant identified "Kyle

Housing #340, Kyle SD 57752" as the property to be searched.  (Id. at Bates

000042).  However, the search warrant neither identified the suspected

---

[1]    Magistrate judges may properly issue report and recommendations regarding search
warrants they previously authorized.  See United States v. Campbell, No. 12-CR-40039-KES,
2012 WL 6042757 (D.S.D. Dec. 5, 2012) (adopting R&R of magistrate judge who also issued
search warrant challenged in suppression motion).

violation, nor specific persons or property to be seized. (Id.). Unlike the application, the search warrant did not incorporate the affidavit in any way. In fact, the space where the search warrant should have specified the items to be seized or incorporated the affidavit was left blank. (Id.). However, SA Patterson testified at the evidentiary hearing that he did not realize anything was missing from the search warrant when he drafted and executed it. (Doc. 88 at p. 30). Further, SA Patterson testified that an Assistant United States Attorney reviewed the search warrant before it was presented to the magistrate judge. (Id. at p. 11). SA Patterson stated he understood the search warrant authorized the search of #340 Kyle Housing, limited to the items listed in Attachment B, and further, that the items seized did not exceed the scope of the warrant. (Id. at p. 31). SA Cooper also testified that he did not notice anything about the warrant indicating that it was deficient. (Id. at p. 84). SA Patterson testified that the FBI has since adopted a standard procedure requiring all search warrants to incorporate the attachments. (Id. at p. 11–12).

After the magistrate judge signed the search warrant on March 27, 2017, the task force conducted numerous surveillance operations on Mr. Janis, as well as his residence, to plan an effective warrant execution. (Id. at p. 17). The task force planned to execute the warrant on April 10, 2017. (Id.). On the morning of April 10, SA Patterson held an operational briefing with the search team. (Id. at p. 17–18). In that briefing, SA Patterson discussed the search warrant and the items to be seized, and handed out a copy of the search warrant with Attachment B and a photograph of Mr. Janis. (Id. at p. 18).

After the briefing, the search team began conducting surveillance and located Mr. Janis as he traveled to Kyle in his white Chevy Malibu.  (Id. at p. 19, 71–72).  When Mr. Janis pulled into his driveway, SA Patterson and other agents made contact with him.  (Id.).  SA Patterson removed Mr. Janis from the Chevy Malibu and SA Dane Rasmussen secured the passenger.  (Id. at p. 19, 23).  Mr. Janis was not put under arrest at that time.  (Id. at p. 63).  While SA Patterson was removing Mr. Janis, he immediately made unsolicited statements, including a statement that he fired a couple rounds off at the cemetery, and that there were firearms inside the Chevy Malibu.  (Id. at p. 19).  Mr. Janis also stated he had a concealed weapons permit, and identified where the firearms were in his vehicle.  SA Patterson found firearms in the locations that Mr. Janis identified.  (Id. at p. 21–22; Ex. 7, 8).  SA Patterson relayed the fact that firearms were present to SA Rasmussen.  (Doc. 88 at p. 23).  While SAs Patterson and Rasmussen secured the vehicle, other law enforcement personnel secured the residence.  (Id. at p. 25).  Mr. Janis was detained, and SA Patterson searched his person for weapons and for evidence related to the search warrant.  (Id. at p. 25).

The search team found suspected illegal substances inside the residence.  (Id. at p. 88).  The team also searched the Chevy Malibu and found, among other things, cell phones, drug paraphernalia, methamphetamine, jewelry bags, shell casings, and ammunition.  (Ex. 1 at Bates 000063–65).  SA Patterson found registration papers in the Malibu stating Mr. Janis and Jeremy Pourier were the registered owners.  (Doc. 88 at p. 27–28; Ex. 12).  SA Patterson also

6

obtained a urine sample from Mr. Janis. (Doc. 88 at p. 29; Ex. 4). Law enforcement personnel charged Mr. Janis tribally with drug offenses, and transported Mr. Janis to the Kyle Jail. (Doc. 88 at p. 88). At the house, the search team left a copy of the search warrant and an inventory of the items seized from Mr. Janis, his residence, and his vehicle. (Id. at p. 26–27; Exhibit 13).

That same day, SA Cooper traveled to the Kyle Jail and conducted a recorded interview with Mr. Janis. (Id. at p. 90–91). The interview commenced at approximately 6:00 p.m., and took place in SA Cooper's vehicle. (Id. at p. 90; Ex. 2). SA Cooper testified that Mr. Janis appeared cordial, attentive, alert, and neither overly tired nor under the influence during the interview. (Id. at p. 92). Before asking questions, SA Cooper presented Mr. Janis with a standard FBI Advice of Rights form and carefully read Mr. Janis his Miranda rights from the form. (Id. at p. 96; Ex. 2 at 17:13:30). After reading each right, SA Cooper ensured Mr. Janis understood and answered any questions he had. Mr. Janis stated he understood his rights and wished to speak with SA Cooper, but he did not wish to sign the Advice of Rights form. (Ex. 2 at 17:16:50). SA Cooper signed and dated the form and wrote in the margin that Mr. Janis agreed to talk but did not wish to sign. (Ex. 3).

On May 15, 2017, BIA Special Agent Justin Hooper presented a search warrant to the undersigned magistrate judge requesting to search the electronic devices seized from Mr. Janis' car and residence. (Ex. 5). SA Hooper is a member of the Northern Plains Safe Trails Drug Force and was familiar

7

with the Brendon Janis investigation, the basis for the previous search warrant, and the SOIs' true identities. (Doc. 88 at p. 115, 119). The affidavit in support of the application referenced the same information used in the previous search warrant, and included additional facts learned after the search of Mr. Janis' car and residence. (Id. at p. 118).

A federal grand jury issued an indictment on May 23, 2017, charging Mr. Janis with Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). At his initial appearance in this court on June 19, 2017, Mr. Janis was released on conditions of bond. At approximately 10:24 p.m. on August 5, 2017, Oglala Sioux Tribe Department of Public Safety Officer Jonathan Archambeau made contact with Mr. Janis in the Pine Ridge Village area. (Doc. 68 at p. 3). While patrolling the area, Officer Archambeau spotted a male standing by a vehicle yelling at Mr. Janis, who was inside the vehicle. (Id.). Mr. Janis had blood on his face, and spoke with a slurred speech pattern. (Doc. 88 at p. 131). Officer Archambeau asked Mr. Janis if he had been consuming alcohol, and Mr. Janis said yes. (Id. at p. 132). Officer Archambeau administered a portable breathalyzer test which showed Mr. Janis was intoxicated. (Id. at p. 134). Consuming alcohol constitutes a violation of tribal law. (Id. at p. 132).

Based on Mr. Janis' behavior, blood alcohol content, and statements, Officer Archambeau believed alcoholic beverages could be inside the vehicle. (Id.). Officer Archambeau also believed weapons could be in the vehicle, based on Mr. Janis' injuries. (Id. at p. 135). Based on this information, Officer

Archambeau and other backup officers searched the vehicle and found a tequila bottle, a pair of brass knuckles, methamphetamine paraphernalia, a bag containing crystal-like residue, and three white hydrocodone pills. (Doc. 68 at p. 6–7). Mr. Janis denied knowledge and ownership of the items. (Doc. 88 at p. 139). Officer Archambeau arrested him on tribal charges and transported him to the Adult Offenders Facility in Pine Ridge. (Id. at p. 138). Approximately one hour after the initial encounter, Mr. Janis took a breathalyzer test and registered a .120 blood alcohol content. (Doc. 68 at p. 8).

Mr. Janis filed a motion to suppress the items seized as a result of the execution of the search warrant issued on March 27, 2017. Mr. Janis argues that the search warrant was invalid because it relies on information from confidential informants, because the information presented was stale, because the warrant failed to particularly describe the place to be searched and the items to be seized, and because there was no nexus between the items seized and criminal behavior (Doc. 45). Mr. Janis also seeks suppression of statements he made on April 10, 2017, as he asserts that his Miranda rights were violated. Mr. Janis additionally seeks suppression of evidence seized from his cell phone as a result of a May 15, 2017, search warrant. He asserts most of the same arguments raised in the challenge to the March 27, 2017, search warrant. Finally, Mr. Janis seeks suppression of items seized as a result of a traffic stop of August 5, 2017, because no warrant was issued for said search and seizure. The United States opposes the motion.

## DISCUSSION

### I.     The March 27, 2017 Search Warrant

A search warrant is supported by probable cause if the supporting affidavit presents a fair probability that evidence or contraband will be found in the location to be searched.  See United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995).  Supporting affidavits must be read in a common-sense fashion and should be evaluated based on the totality of the circumstances.  E.g., id.; United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995).  "Deference is accorded an issuing magistrate's probable cause determination."  United States v. Brown, 584 F.2d 252, 256 (8th Cir. 1978).

#### A.     Reliability of the Sources of Information

Mr. Janis first argues the search warrant's reliance on unnamed sources of information renders the affidavit wholly unreliable.  The Supreme Court has recognized "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law."  Roviaro v. United States, 353 U.S. 53, 59 (1957). The Court explained the privilege exists to protect "the public interest in effective law enforcement."  Id.  Citizens are more likely to report crimes to law-enforcement officials if they are able to remain anonymous.  Id.  On the other hand, the privilege is not absolute.  Id. at 60.  If disclosure of an informant's identity "is relevant and helpful to the defense of an accused" or "essential to a fair determination of a cause," disclosure is necessary.  Id. at 60–61.  The court

must weigh these competing interests against each other.  United States v. Harrington, 951 F.2d 876, 877 (8th Cir. 1991) (citing Roviaro, 353 U.S. at 59)).

Law enforcement officers must present sufficient information to the judge so that the judge can make an informed and independent determination of probable cause.  Franks v. Delaware, 438 U.S. 154, 165 (1978).  When search warrant affidavits are based upon information supplied by informants, the key question is whether such information is reliable.  United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993).  Where an SOI's information is corroborated, even in part, by police or by other SOIs, the court may conclude the informant is reliable.  United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001); see Williams, 10 F.3d at 593 ("If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable").

An SOI is considered to be reliable and credible if the supplied information is at least partially corroborated by other sources.  United States v. Humphreys, 982 F.2d 252, 259 (8th Cir. 1992); see also United States v. Murphy, 69 F.3d 237, 240 (8th Cir. 1995).  Probable cause may be found, for example, when the information supplied by one SOI is consistent with specific details provided by a second, independent SOI.  United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998).  Thus, reciprocal corroboration may render informant information reliable and credible enough to support a finding of

probable cause.  Id.; United States v. Nieman, 520 F.3d 834, 839–40 (8th Cir. 2008).

Furthermore, "[w]hen an informant's information is at least partly corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause."  United States v. Caswell, 436 F.3d 894, 898 (8th Cir. 2006) (internal quotations and alterations omitted).  Cooperation agreements between informants and law enforcement do not render an affidavit unreliable; in fact, "[j]udicial officers issuing warrants are aware of deals made with informants who themselves are facing charges.  Therefore, failure to inform the issuing officer of a deal is not fatal to the validity of the warrant."  United States v. Wold, 979 F.2d 632, 635 (8th Cir. 1992).

In his motion and at the evidentiary hearing, Mr. Janis argued that the tips were insufficiently predictive and were not corroborated.  Mr. Janis cites to two Ninth Circuit cases in support of his argument that information provided by incarcerated informants is less reliable.  (Doc. 45 at p. 2) (citing United States v. Hall, 113 F.3d 157, 159 (9th Cir. 1997); United States v. Reeves, 210 F.3d 1041 (9th Cir. 2000)).  Mr. Janis also points to a case out of the Southern District of Iowa for the proposition that favorable cooperation agreements impact an informant's reliability.  (Id.) (citing United States v. Medina-Reyes, 877 F. Supp. 468, 475 (S.D. Iowa 1995).  SA Patterson testified that some of the SOIs were incarcerated and/or provided information pursuant to proffer agreements.  However, even if the cases cited by Mr. Janis were binding authority, the facts contained within are far different than those in front of this

12

court.  In <u>Hall</u>, the Ninth Circuit invalidated the search warrant at issue because it was based on information provided by one uncorroborated SOI, who previously made false reports to police; furthermore, the officer who procured the search warrant "recklessly failed to disclose" all of the SOI's prior convictions.  <u>Hall</u>, 113 F.3d at 159.  In <u>Reeves</u>, the Ninth Circuit upheld a search warrant even though officers did not inform the magistrate of the informant's history of dishonesty, because the information was sufficiently corroborated and the prior dishonest crimes did not bear on the drug charges at issue.  <u>Reeves</u>, 210 F.2d at 1045–46.

In <u>Medina-Reyes</u>, the District Court for the Southern District of Iowa relied on <u>Wold</u> and other Eighth Circuit precedent, stating "judicial officers issuing warrants easily suspect and take into account the typical kind of bargaining that goes on between police and a confidential informant[.]" 877 F. Supp. at 474.  While failure to inform a judge about cooperation agreements is not necessarily fatal to the warrant, the undisclosed cooperation agreement at issue in <u>Medina-Reyes</u> was a "remarkable document" requiring the cooperating informant to "make a prosecutable case" against the defendant within a specific period of time in order to obtain a suspended sentence.  <u>Id.</u> at 475.  Moreover, no information corroborated the informant's incriminating allegations against the defendant.  Such an agreement certainly bore on the reliability of the informant, and should have been disclosed to the judge.  <u>Id.</u>

This case contains none of the concerns outlined by the Ninth Circuit and the Southern District of Iowa.  The affidavit contained incriminating

information corroborated by fifteen separate SOIs.  The affidavit identified

which SOIs provided information pursuant to proffer agreements.  The

incriminating information spanned several years, leading up to the controlled

buy at Mr. Janis' residence.  Mr. Janis fails to establish any facts that the

proffer agreements constituted anything out of the ordinary, like the

cooperation agreement at issue in Medina-Reyes, or even that any proffer

agreements were hidden from the magistrate judge.  Neither does Mr. Janis

point to any evidence indicating the SOIs had histories of lying to law

enforcement or other crimes of dishonesty, or that such information was

hidden from the magistrate.  The SOIs and CI provided corroborating

incriminating information, and the affidavit included information about

pending indictments or proffer agreements which the magistrate judge

considered in making her probable cause determination.  Finally, Mr. Janis

argues no reason why disclosure of the SOIs' identities would be "relevant and

helpful" to his defense.  Roviaro, 353 U.S. at 60–61.  The information in the

affidavit was reliable and the probable cause determination was proper.  Tyler,

238 F.3d at 1039; Williams, 10 F.3d at 593; Wold, 979 F.2d at 635.

### B.    Staleness of the Search Warrant

Mr. Janis argues that the information contained in the affidavit was

stale.  "There is no bright-line test for determining when information in a

warrant is stale."  United States v. Ortiz-Cervantes, 868 F.3d 695, 700 (8th Cir.

2017) (internal citation omitted).  "A warrant becomes stale if the information

supporting the warrant is not 'sufficiently close in time to the issuance of the

warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search.'" United States v. Brewer, 588 F.3d 1165, 1173 (8th Cir. 2009) (quoting United States v. Palega, 556 F.3d 709, 715 (8th Cir. 2009)). "Important factors to consider in determining whether probable cause has dissipated . . . include the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search." Id. (quoting United States v. Gibson, 123 F.3d 1121, 1124 (8th Cir. 1997)).

Here, the affidavit established Mr. Janis' ongoing drug distribution activities over a period of several years, leading up to the controlled buy on March 22, 2017 at Mr. Janis' residence. The magistrate judge issued the search warrant on March 27, 2017. In light of these circumstances, the court concludes that the information used to establish probable case was not stale.

### C.    Nexus Between Conduct and Defendant's Residence

Mr. Janis argues that the affidavit's failure to allege a nexus between his residence and drug distribution rendered it inadequate to establish probable cause. "[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000). "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." United States v. Etheridge, 165 F.3d 655, 657 (8th Cir. 1999).

The affidavit sets forth numerous detailed reports from 2015 through 2017 stating Mr. Janis was selling meth out of #340 Kyle Housing.  SA Cooper observed vehicles registered to Mr. Janis at #340 Kyle Housing in late 2015 and throughout 2016.  In March 2017 the controlled buy resulted in a methamphetamine transaction out of #340 Kyle Housing.  Mr. Janis' drivers' license lists #340 Kyle Housing as his residence.  The information in the affidavit established a reasonable, logical likelihood of finding useful evidence at #340 Kyle Housing.

### D.    Search Warrant Particularity and Incorporation

The Warrant Clause of the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV.  "Particularity prohibits the government from conducting 'general, exploratory rummaging of a person's belongings.'"  United States v. Sigillito, 759 F.3d 913, 923 (8th Cir. 2014) (quoting United States v. Saunders, 957 F.2d 1488, 1491 (8th Cir. 1992)).  "To satisfy the particularity requirement of the Fourth Amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized."  United States v. Summage, 481 F.3d 1075, 1079 (8th Cir. 2007) (internal quotation omitted); see Groh v. Ramirez, 540 U.S. 551, 559–63, 561 n.4 (2004) (holding that search was illegal because warrant provided no particularity, did not incorporate affidavit, and affidavit did not accompany the warrant, there could "be no written assurance that the

16

Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit.").

### 1. The incorporation requirement

The Eighth Circuit has recognized that a warrant which does not on its face identify items to be seized may nevertheless satisfy the particularity requirement by incorporating a supporting document.  See, e.g., United States v. Hamilton, 591 F.3d 1017, 1024 (8th Cir. 2010).  A warrant will be read to incorporate an affidavit "if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant."  Groh, 540 U.S. at 557–58; see United States v. Curry, 911 F.2d 72, 77 (8th Cir. 1990) ("[A] description in the supporting affidavit can supply the requisite particularity if 'a) the affidavit accompanies the warrant, and b) the warrant uses suitable words of reference which incorporate the affidavit therein.'" (quoting United States v. Strand, 761 F.2d 449, 453 (8th Cir. 1985))).

In Groh, the Supreme Court found the search warrant at issue violated the Fourth Amendment because "the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant."  Groh, 540 U.S. at 558.  Significantly, the Court stated "[t]he mere fact that the Magistrate issued a warrant does not necessarily establish that he agreed that the scope of the search should be as broad as the affiant's request.  Even though petitioner acted with restraint in conducting the search, 'the inescapable fact is that this

restraint was imposed by the agents themselves, not by a judicial officer.'" Id. at 561 (citing Katz v. United States, 389 U.S. 347, 356 (1967)).

However, "[n]ot every Fourth Amendment violation results in exclusion of the evidence obtained pursuant to a defective search warrant." Hamilton, 591 F.3d at 1027. "Because the purpose of the exclusionary rule is to safeguard Fourth Amendment rights generally through its deterrent effect, it applies only where it results in appreciable deterrence." United States v. Szczerba, 897 F.3d 929, 937 (8th Cir. 2018) (internal citations and quotations omitted); United States v. Leon, 468 U.S. 897, 909 (1984) (establishing good faith exception to exclusionary rule). "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." Davis v. United States, 564 U.S. 229, 237 (2011).

"When law enforcement officers 'exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs.'" Szczerba, 897 F.3d at 938 (quoting Davis, 564 U.S. at 238) (additional quotations omitted). "But 'when police mistakes are the result of negligence rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not pay its way.'" Id. (quoting Herring v. United States, 555 U.S. 135, 144 (2009) (additional quotations and alterations omitted). Suppression remains an appropriate remedy if, "depending on the circumstances of the particular case, a warrant [is] so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that

the executing officers cannot reasonably presume it to be valid." <u>Leon</u>, 468 U.S. at 923.

The Eighth Circuit recently applied <u>Groh</u> to a search warrant involving facts similar to this case.  <u>Szczerba</u>, 897 F.3d 929.  There, the warrant neither listed items to be seized nor used any incorporating language referencing the affidavit.  <u>Id.</u> at 937.  The Eighth Circuit found that for those reasons it lacked particularity.  Further, the warrant did not incorporate the affidavit by merely mentioning it in the warrant's averment of probable cause.  <u>Id.</u> (citing <u>Groh</u>, 540 U.S. at 555, 558; <u>Strand</u>, 761 F.2d at 453; <u>Curry</u>, 911 F.2d at 77).

However, the court found that suppression was not appropriate because "the warrant was not so obviously deficient that any reasonable officer would have known that it was constitutionally fatal."  <u>Id.</u> at 938.  Significantly, the warrant "clearly and immediately presented to the reader's eye" the two locations to be searched, which were the subject of the affidavit.  <u>Id.</u> (internal quotations omitted).  The warrant also specifically referred to the affidavit, which clearly described the locations to be searched and the items to be seized. <u>Id.</u>  The issuing judge signed the supporting affidavit, and the affiant brought the affidavit and the warrant with her to supervise the search.  <u>Id.</u> at 939. "That the affidavit was signed by the issuing judge and that it accompanied the warrant" distinguished <u>Szczerba</u> from <u>Groh</u>.  <u>Id.</u>  Further, application of the exclusionary rule would not result in any appreciable deterrence of police misconduct.  <u>Id.</u>  While the affiant acted negligently in drafting the warrant,

she conducted the search in accordance with the Fourth Amendment by concealing no facts from the judge and carefully securing the warrant.  Id.

### 2.    Suppression is not appropriate

Szczerba controls this case.  The search warrant in Mr. Janis' case lacked particularity and did not incorporate the affidavit by reference. However, suppression is not appropriate.  First, like in Szczerba, the warrant clearly and immediately stated the place to be searched, Kyle Housing #340. Szczerba 897 F.3d at 938; Exhibit 1.  Second, the warrant did refer to the affidavit, which clearly described in fourteen numbered paragraphs the places to be searched and items to be seized.  The affidavit also contained a photograph of Kyle Housing #340.  See id.  The issuing magistrate judge signed the application, affidavit, attachments, and search warrant, which SA Patterson presented in a bundle.  The magistrate carefully reviewed the list of items to be seized, indicated by her initialed change to Attachment B and the order to seal.  See id. at 939; Exhibit 1.  The court therefore has written assurance that "the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit."  Groh, 540 U.S. at 560. This case therefore is distinguishable from Groh.  Szczerba, 897 F.3d at 939.

Like in Szczerba, application of the exclusionary rule here would not result in appreciable deterrence of police misconduct.  Id.; Leon, 468 U.S. at 909.  Law enforcement acted negligently by failing to incorporate the attachments.  However, SA Patterson's actions were objectively reasonable in believing the warrant, bundled together with the carefully constructed

supporting documents and authorized by a neutral magistrate judge,

authorized the seizure of the items removed from Mr. Janis' residence on April

10, 2017.  See Hamilton, 591 F.3d at 1030.  SA Patterson, "with full knowledge

of the items authorized to be seized, carefully executed the warrant, seizing

only those items included in the list of items in the affidavit." Id. at 1029.  SA

Patterson adhered to the requirements of the Fourth Amendment by presenting

a detailed application to the magistrate judge and concealing no facts in the

application.  See Szczerba, 897 F.3d at 939.  His "conduct certainly did not

reflect the type of deliberate, reckless, or grossly negligent disregard for the

Fourth Amendment that the exclusionary rule can effectively deter.  Id. Under

these facts, the court finds the warrant was not "so obviously deficient" that no

reasonable officer would presume it valid.  Groh, 540 U.S. at 558.

The court also rejects the argument that law enforcement's failure to

leave copies of the attachments and the affidavit at Mr. Janis' residence

violated the Fourth Amendment.  In United States v. Sigillito, the Eighth

Circuit dismissed an analogous argument where searching officers failed to

leave the limiting attachments at the scene of the search:

> [W]e reject Sigillito's contention that the executing officers intended
> to conceal the scope of the investigation by failing to leave
> Attachment A at the scene of the search.  The record demonstrates
> that the executing officers left a comprehensive handwritten
> inventory of the items seized at the scene of the search.  This
> inventory was sufficient to apprise Sigillito of the scope of the
> government's investigation . . . even assuming that the government
> had such a duty to inform Sigillito at that stage in the proceedings.

759 F.3d 913, 925 (8th Cir. 2014).  Similarly, SA Patterson left a detailed

inventory of the items seized, which informed Mr. Janis of the scope of the

search.  For these reasons, the court finds that law enforcement executed the search reasonably.  "Because the warrant . . . satisfied the particularity requirement when issued, and because officers performed the search reasonably, no constitutional violation occurred."  Baranski, 515 F.3d at 861. Therefore, suppression of the evidence obtained through the search of #340 Kyle Housing, including the urine sample which was specifically listed in Attachment B, is not warranted in this case.

## II.    April 10, 2017 Interview

Mr. Janis argues his statements provided to SA Cooper on April 10, 2017 should be suppressed because he was not read his Miranda rights.  (Doc. 45 at p. 6).  The audio recording of the interview clearly shows SA Cooper methodically and carefully read Mr. Janis his Miranda rights before commencing questioning.  (Ex. 2 at 17:13:30).  Mr. Janis stated he understood his rights and was willing to talk at that time.  The fact that Mr. Janis declined to sign the form does not render his Miranda waiver invalid; a waiver may be express or implied and need not be verified with a signature.  United States v. Rezac, 3:16-CR-30051-RAL, 2017 WL 9292243, at *3 (D.S.D. May 24, 2017) (citing Berguis v. Thompkins, 560 U.S. 370, 383–85 (2010); North Carolina v. Butler, 441 U.S. 369, 373, 375–76 (1979)); see United States v. Adams, 820 F.3d 317, 323 (8th Cir. 2016) ("Where the prosecution shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain

silent.").  Mr. Janis offers no reason why his <u>Miranda</u> waiver was invalid.
Suppression is not warranted on this point.

Mr. Janis additionally argues that his statement was obtained as fruit of
the poisonous tree, presumably claiming he never would have been arrested
but for the execution of the search warrant.  (Doc. 45 at p. 6).  As stated above,
the search warrant was valid and the items seized, including the urine sample,
were lawfully obtained.  Mr. Janis was validly charged tribally with drug
offenses, taken into custody, and transported to the Kyle Jail.  (Doc. 88 at p.
88).  Suppression of Mr. Janis' interview is not appropriate.

## III.    Seizure of Cell Phones and Devices

Mr. Janis argues that the contents of all cell phones and devices seized
from his residence should be suppressed because the search warrant was
based on the same probable cause statement as the March 27, 2017 search
warrant.  Mr. Janis also argues the final paragraphs of the cell phone affidavit
are based on evidence obtained during the first search, which he claims was
illegal. (Doc. 45 at 6–7).  As stated above, the magistrate judge properly found
probable cause, and the March 27, 2017 search warrant was valid.  Therefore,
suppression is not warranted on this point.

## IV.    August 5, 2017 Search

### A.    Vehicle Search

Mr. Janis challenges the search of his vehicle on August 5, 2017 because
it was conducted without a warrant.  The Fourth Amendment right against
unreasonable searches and seizures is "preserved by a requirement that

23

searches be conducted pursuant to a warrant issued by an independent judicial officer." California v. Carney, 471 U.S. 386, 390 (1985). Certain searches nonetheless conform to the Fourth Amendment reasonableness standard even when not conducted pursuant to a warrant. United States v. Caves, 890 F.2d 87, 89 (8th Cir. 1989) (citing Carney, 471 U.S. at 390).

One such exception to the Fourth Amendment warrant requirement is the "automobile exception," which permits a police officer who has lawfully made a traffic stop to search the vehicle without a warrant if probable cause exists to believe that contraband or evidence of criminal activity is located inside. United States v. Payne, 119 F.3d 637, 642 (8th Cir. 1997). Probable cause requires "'only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 243–44 n.13 (1983)). Probable cause to conduct a search of the entire vehicle may stem from a lawful traffic stop if police reasonably believe, at the time they begin the search, that contraband or evidence of criminal activity is in the vehicle. Caves, 890 F.2d at 90 (quoting Brinegar v. United States, 338 U.S. 160, 175–76 (1949)). "It is the characteristic mobility of all automobiles, not the relative mobility of the car in a given case, that . . . allows for warrantless searches when probable cause exists." United States v. Perry, 925 F.2d 1077, 1080 n.4 (8th Cir. 1991).

Based on Mr. Janis' injuries, slurred speech, acknowledgement that he had been consuming alcohol, and initial PBT result, Officer Archambeau reasonably believed evidence of alcohol consumption could be in the vehicle.

24

See Caves, 890 F.2d at 90.  Officer Archambeau therefore had probable cause to conduct a search of the vehicle.  Suppression of the evidence obtained from the vehicle on August 5, 2017 is not warranted.

### B.    PBT test

Mr. Janis provides no legal authority for his proposition that on August 5, 2017, Officer Archambeau illegally obtained a PBT pre- and post-arrest. (Doc. 45 at p. 7 (citing Missouri v. McNeely, 569 U.S. 141, 148 (2013) (officer violated Fourth Amendment by forcibly obtaining warrantless blood sample); United States v. Kincade, 379 F.3d 813, 821 n.15 (9th Cir. 2004) (same)).  It is also perplexing as to why Mr. Janis challenges the results of the PBT test in light of the fact that Mr. Janis testified on September 11, 2017, that he consumed alcohol on the date in question.  (Doc. 68 at pp. 24, 27).[2]

Regardless of this concession by Mr. Janis, the court concludes that no Fourth Amendment violation occurred when Mr. Janis was subjected to a PBT test on August 5, 2017.  As a condition of his pretrial release, Mr. Janis is required to submit to warrantless searches of his person to ensure that he has not used alcohol or drugs.  (Doc. 20).  Therefore, Mr. Janis has a diminished expectation of privacy and the search was not a greater intrusion than necessary to assure the safety of the community.  See United States v. Kills Enemy, 3 F.3d 1201 (8th Cir. 1993).  Recently, the United States Supreme

---

[2]  Mr. Janis was released pending trial in this matter.  Pursuant to 18 U.S.C. § 3142, the court imposed conditions of release including that the defendant submit to "random testing required by pretrial services to ensure that he has not used alcohol or drugs." (Doc. 20).  The government moved to revoke Mr. Janis' bond subsequent to his August 5, 2017, arrest.  The court held an evidentiary hearing on the motion to revoke bond on September 11, 2017.  The transcript of the bond revocation hearing can be found at Docket 68.

Court found the physical intrusion of a breath test is almost negligible, and the "participation in a breath test is not an experience that is likely to cause any great enhancement in the embarrassment that is inherent in any arrest." Birchfield v. North Dakota, 136 S.Ct. 2160, 2176-77 (2016). The Birchfield Court concluded that "[a] breath test does not 'implicat[e] significant privacy concerns.'" 136 S.Ct. at 2178.

Here, Officer Archambeau came into contact with Mr. Janis while investigating a disturbance on August 5, 2017, in Pine Ridge, South Dakota. Upon speaking with Mr. Janis, Office Archambeau observed that Mr. Janis had a slurred speech pattern and he admitted to drinking alcohol, which is illegal on the Pine Ridge Indian Reservation. (Doc. 88 at p. 132). Officer Archambeau administered a portable breath test which verified that Mr. Janis consumed alcohol. A second PBT was administered subsequent to his arrest at the Adult Offender's Facility.

Since Mr. Janis was subject to warrantless testing to ensure compliance with a condition of his release, there was probable cause to believe that he had been drinking in violation of tribal law, and because a breath test does not implicate significant privacy concerns, the court concludes that the Fourth Amendment does not require suppression of this evidence.

### C.    Urine sample

Mr. Janis moves to suppress the testing results of his urine which was presumably taken at the Adult Offender's facility subsequent to his arrest on August 5, 2017. (Doc. 45 at p. 7). The government's pre- and post- evidentiary

briefing fails to address this issue.  No evidence was presented at the June 13, 2018, evidentiary hearing regarding the testing of Mr. Janis' urine.  The government asked the court to take judicial notice of testimony given at the September 11, 2017, bond revocation hearing.  The scant evidence in the record consists of Mr. Janis' supervising pretrial release officer testifying that he received a document from the Oglala Sioux Tribe which purports to be the results from a drug test administered on August 7, 2017, at the Adult Offender Facility.  (Doc. 68 at p. 15).  The document purports to show that Mr. Janis tested positive for methamphetamine.  The record is completely devoid of any credible evidence regarding the details of when the urine test was taken, who administered the test, where the urine test was taken, or the method used to compile the urine test results.  See Doc. 68, Exhibit 1.  The court found Exhibit 1 to be of little to no evidentiary value at the September 11, 2017, bond revocation hearing; and the court finds it to be of no evidentiary value for purposes of determining whether Mr. Janis' urine testing was constitutionally permissible.  While the court recognizes that Mr. Janis is subject to warrantless testing required by pretrial services as a condition of his release, the court cannot conclude that the pretrial release condition alone serves as an unlimited waiver of Mr. Janis' Fourth Amendment rights to be free from unreasonable searches and seizures.  The government must present some credible facts regarding how and why the urine sample was taken in order for the court to conclude that the search was reasonable.  It is well settled that the government bears the burden of establishing an exception to the warrant

requirement.  United States v. Hill, 386 F.3d 855, 858 (8th Cir. 2004).  Given the complete absence of any credible evidence regarding Mr. Janis' urine sample, the court concludes that the government has failed to meet it burden and therefore, the results of the urine sample presumably taken on August 7, 2017, should be suppressed.

## CONCLUSION

For the aforementioned reasons, it is respectfully recommended that the Motion to Suppress be granted in part and denied in part, consistent with the above analysis.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 27th day of December, 2018.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge