UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>BRENDON JANIS,<br><br>　　　　　　Defendant. | CR. 17-50076-JLV<br><br>ORDER |

**INTRODUCTION**

On May 23, 2017, a grand jury indicted defendant Brendon Janis on one count of conspiracy to distribute methamphetamine. (Docket 2). A grand jury later issued a superseding indictment bringing against defendant an additional charge of possession of firearms by a prohibited person. (Docket 74). Now pending before the court is defendant's motion to suppress statements and evidence taken from defendant in searches and interrogations on April 10, May 15 and August 5, all in 2017. (Docket 45). The United States opposes this motion. (Docket 54).

The suppression motion was referred to Magistrate Judge Daneta Wollmann for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and the court's March 9, 2015, standing order. The magistrate judge conducted an evidentiary hearing on June 13, 2018, at which five witnesses testified and 19 exhibits were received into evidence. (Dockets 70 & 71). The parties submitted post-hearing briefing. (Dockets 99 & 105). The magistrate judge then issued a report and recommendation ("R&R") concluding defendant's motion should be

granted in part and denied in part. (Docket 106). Defendant timely filed objections to the R&R. (Docket 109). The government does not oppose the R&R. (Docket 112).

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

For the reasons given below, the court denies defendant's objections to the R&R. The court adopts the R&R in full and denies defendant's suppression motion.

## ANALYSIS

**I.  Defendant's Objections**

Defendant raises three specific objections to the R&R. (Docket 109). As summarized by the court, defendant objects to:

1. The magistrate judge's finding that each of the five law enforcement witnesses who testified at the evidentiary hearing were credible. Id. at pp. 1-2.

2. The magistrate judge's finding that a reasonable law enforcement officer would not have immediately concluded the search warrant was "facially deficient[.]" Id. at pp. 1-3. Defendant also argues law enforcement in this case considered the warrant and the process used to obtain it "faulty" because they changed their procedures. Id. at p. 3.

2

> 3. The magistrate judge's "legal conclusion that suppression is not an appropriate remedy for the Fourth Amendment violation, lack of warrant particularity." Id. at p. 2.

At the outset, the court overrules defendant's initial objection to "all factual findings made by the magistrate court and to the legal conclusions it reached therefrom." Id. at p. 1. The court finds this objection does not advance any specific legal or factual argument.[1] As the magistrate judge informed defendant in the R&R, "[o]bjections must be timely *and specific* in order to require de novo review by the District Court." (Docket 106 at p. 28) (citing Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986)) (emphasis added). Defendant's specific objections all relate to the warrant particularity issue he first raised in his suppression motion. (Docket 45 at pp. 4-5). The court will undertake its *de novo* review of that matter in the present order.

Regarding matters other than the warrant particularity issue, the court, following a *de novo* review of the briefing submitted in the case, the transcript of the evidentiary hearing, and all evidence submitted by the parties, finds the R&R is well-reasoned with no legal or factual flaws. The court adopts the R&R's analysis in full on those issues. To the extent defendant attempts to object to the R&R's resolution of his arguments on matters other than the warrant particularity issue, his objections are overruled.

---

[1]Defendant attempts to "incorporate[] and re-allege[] the facts, authority and argument" set forth in his earlier briefing. (Docket 109 at p. 4). However, he does not respond to any specific factual findings or legal conclusions made in the R&R. This attempt also fails for lack of specificity.

## II. Factual Findings

The parties primarily grapple with the question of whether the search warrant issued by the magistrate judge on March 27, 2017, particularly set out the items to be seized as required by the Fourth Amendment. The factual findings presented here are tailored to that question. The court adopts the factual findings of the R&R to the extent they are not inconsistent with this order.

The Northern Plains Safe Trails Drug Task Force—a task force composed of law enforcement officers from the Bureau of Indian Affairs ("BIA"), Federal Bureau of Investigation ("FBI"), the Oglala Sioux Tribe Department of Public Safety ("OST DPS"), and other agencies—began investigating defendant in September 2015. (Docket 88 at pp. 5-6). The investigation began because cooperators and concerned citizens told members of the task force defendant was selling methamphetamine. Id. at pp. 5-6, 8. Between September 2015 and March 2017, fifteen confidential sources of information identified defendant to law enforcement as a person involved in the methamphetamine trade on the Pine Ridge Reservation. Id. at p. 14; Docket 54-1 at pp. 4-8.

On March 22, 2017, the task force conducted a controlled buy operation with a confidential informant. (Docket 88 at pp. 15-16). The informant was to purchase methamphetamine from a targeted seller at the seller's residence. (Docket 54-1 at pp. 9-10). The informant and law enforcement surveilling the buy observed the seller stop at defendant's residence "and make contact with 4-5

male subjects" before completing the sale with the informant.  Id. at p. 10; Docket 88 at pp. 15-16.  These observations suggested defendant "continued to be involved in drug distribution activities," leading law enforcement to seek a search warrant.  (Docket 88 at pp. 16-17).

FBI Special Agent Preston Patterson ("SA Patterson") drafted an application for a federal search warrant and served as the affiant in the accompanying affidavit.  Id. at p. 9; see generally Docket 54-1.  He brought the application before the magistrate judge on March 27, 2017.  (Docket 54-1 at p. 12).  SA Patterson proposed to search defendant's residence, including any vehicles and outbuildings, and seize numerous items from the residence and defendant's person.  Id. at pp. 4-5.  The application included two attachments.  Id. at pp. 13-14.  Attachment A is a picture of defendant's residence.  Id. at p. 13.  Attachment B is the list of items SA Patterson proposed to seize.  Id. at p. 14.  Attachment B, as it was originally written, contained the following line in its list of items SA Patterson proposed to seize: "Cellular telephones, tablets, computers, and any other communication devices, including their contents." Id.  The magistrate judge crossed out the phrase "including their contents" and initialed the change.  Id.

The magistrate judge placed SA Patterson under oath before she executed the search warrant application.  (Dockets 106 at p. 4 & 54-1 at p. 12).  The magistrate judge further signed the search warrant prepared by SA Patterson and an order sealing the application and warrant.  (Dockets 106 at p. 4 & 54-1

at pp. 16-17). An Assistant United States Attorney ("AUSA") reviewed the search warrant before SA Patterson presented it to the magistrate judge. (Docket 88 at p. 11). The warrant itself is a form document with blank spaces to allow for the description of the person or place to be searched and the items to be seized. (Docket 54-1 at p. 17). Defendant's address is the sole entry in the space for the description of the person or place to be searched. Id. The form language preceding the space for the description of the items to be seized states, "I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above and that such search will reveal[.]" Id. Nothing is written in the following blank space. Id.

Members of the task force executed the warrant on April 10, 2017. (Docket 88 at pp. 17-18). They found "suspected illegal substances" and firearms in defendant's residence and vehicle, including methamphetamine. Id. at p. 88; Docket 54-1 at pp. 19-24. During the search, SA Patterson took a urine sample from defendant, pursuant to the warrant, which later tested positive for methamphetamine. (Dockets 88 at pp. 28-29 & 54-3). Defendant was arrested on OST drug charges and transported to the jail in Kyle, South Dakota. (Docket 88 at p. 88). Law enforcement left a copy of the warrant and the evidence inventory—but not the affidavit or attachments—at defendant's residence. Id. at pp. 26-27. SA Patterson testified he did not recall personally giving defendant a copy of the warrant. Id. at p. 35.

At the evidentiary hearing, SA Patterson testified he did not notice the omission of any description of items to be seized from the face of the warrant when the warrant was drafted, signed or executed. Id. at p. 30. FBI Special Agent Dan Cooper ("SA Cooper"), who participated in the investigation of defendant, also testified he did not notice the omission. Id. at p. 84. SA Patterson testified he understood the search warrant to be limited to the items specified in Attachment B. Id. at p. 30. South Dakota Department of Criminal Investigation ("DCI") Special Agent Dane Rasmussen ("SA Rasmussen"), who participated in executing the search warrant, testified he also understood, from a briefing given by SA Patterson, that the scope of the search was governed by Attachment B. Id. at pp. 69-71. The items seized pursuant to the warrant were items listed in Attachment B. Id. at p. 31; Docket 54-1 at pp. 18-25.

BIA Special Agent Justin Hooper ("SA Hooper"), who was familiar with the investigation into defendant but did not participate in the execution of the search warrant, applied to the magistrate judge for a second search warrant. (Dockets 88 at pp. 115-117 & 54-4). The application sought to search electronic devices seized from defendant's home and vehicle during the execution of the first warrant. (Docket 54-4 at pp. 8, 17-18). The magistrate judge signed the second warrant on May 15, 2017. Id. at p. 1. The magistrate judge also ordered the second warrant and its application sealed. Id. at p. 20.

A federal grand jury indicted defendant on May 23, 2017. (Docket 2). Defendant filed the present suppression motion alleging the first search warrant

7

was insufficiently particular on November 16, 2017. (Docket 45). During the evidentiary hearing on June 13, 2018, SA Patterson testified a new procedure requiring search warrants to incorporate attachments listing places to be searched and items to be seized was implemented approximately "seven months ago." (Docket 88 at pp. 11-12). The new policy described by SA Patterson would have been implemented in December 2017 or January 2018, shortly after defendant challenged the first warrant in this case.

## III. Discussion

### A. Legal standards

The Warrant Clause of the Fourth Amendment requires warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." Groh v. Ramirez, 540 U.S. 551, 557 (2004). However, "[t]he Warrant Clause's particularity requirement can be satisfied by including the items to be seized in an affidavit or attachment that is adequately referenced in the search warrant." United States v. Hamilton, 591 F.3d 1017, 1024 (8th Cir. 2010). Supporting documentation providing the needed particularity is adequately referenced in the warrant "if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." Groh, 540 U.S. at 557-58.

"The fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies." Herring v. United States,

555 U.S. 135, 140 (2009). "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." Davis v. United States, 564 U.S. 229, 237 (2011).

> We have never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence. To the extent that application of the exclusionary rule could provide some incremental deterrent, that possible benefit must be weighed against its substantial social costs. The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free—something that offends basic concepts of the criminal justice system. The rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application.

Herring, 555 U.S. at 141 (internal citations and quotations omitted).

> When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way.

Davis, 564 U.S. at 238 (internal citations and quotations omitted).

### B. Defendant's objections

#### 1. First objection[2]

Defendant first objects to the magistrate judge's finding that the five law enforcement witnesses who testified at the evidentiary hearing were credible. (Docket 109 at p. 1). He argues, "[i]n direct contradiction to this testimony, is

---

[2]Defendant denominated this objection as his second. However, the court previously found defendant's initial objection to be insufficiently specific and overruled it. See supra Section I. This order only examines the specific objections and numbers them accordingly.

9

the finding that the 'space where the search warrant should have specified the items to be seized or incorporated the affidavit was left blank.' " (Docket 109 at p. 1) (quoting Docket 106 at p. 5). The above-quoted sentence is the entirety of defendant's objection to the witnesses' credibility. The court construes defendant's laconic objection as an attack on SA Patterson's and SA Cooper's testimony that they did not notice any omissions on the face of the search warrant. (Docket 88 at pp. 30, 84).

The magistrate judge's finding does not undermine the credibility of SA Patterson and SA Cooper. The warrant was reviewed by an AUSA and signed by the magistrate judge, neither of whom evidently noticed the error. SA Patterson's and SA Cooper's testimony aligned with the narrative presented at the suppression hearing of oversight or negligence concerning this warrant. If defendant believes law enforcement was aware of the warrant's deficiency but ignored it in bad faith, he has not alleged any facts supporting such a theory. The court will not presume bad faith on the part of law enforcement. After its *de novo* review of the record, the court agrees with the magistrate judge and finds the law enforcement witnesses who testified at the evidentiary hearing were credible. Defendant's first objection is overruled.

### 2. Second objection

What the court terms defendant's second objection is a summary of defendant's arguments that law enforcement should have known the warrant was facially deficient. (Docket 109 at pp. 1-3). Defendant asserts the

magistrate judge's factual finding that the warrant's section for describing the items to be seized was left blank compels the conclusion that reasonable law enforcement officers would have known the warrant was invalid. Id. at pp. 2-3. He also contends the "faulty warrant and process was apparent to law enforcement" because the FBI changed its procedures to require incorporation of the affidavit on the face of the warrant. Id. at p. 3.

Although he does not explicitly argue the point, defendant appears to raise these objections in an attempt to avoid the good-faith exception to the exclusionary rule promulgated in United States v. Leon. 468 U.S. 897 (1984). In Groh, the Supreme Court held the warrant at issue there—which, like the warrant here, "failed to identify any of the items that [law enforcement] intended to seize"—was "so facially deficient . . . that the executing officers [could not] reasonably presume it to be valid." Groh, 540 U.S. at 554, 564 (quoting Leon, 468 U.S. at 923). Based on this reasoning, the Court concluded the good-faith exception did not apply and the law enforcement petitioners were not entitled to qualified immunity on Bivens[3] and § 1983 claims. Id. at 564-65.

Were the court considering this question immediately following Groh, it might well agree with defendant's objection. However, the United States Court of Appeals for the Eighth Circuit recently distinguished Groh in a case almost identical to the present matter. United States v. Szczerba, 897 F.3d 929 (8th Cir. 2018), petition for cert. filed, No. 18-6905 (Nov. 29, 2018). The search

---

[3]Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

11

warrant at issue in Szczerba, like the warrant here, "did not identify the items to be seized during the search, and although it referred to [law enforcement's] supporting affidavit, it did not incorporate the affidavit by reference." Id. at 936. The Eighth Circuit nevertheless held "the warrant was not so obviously deficient that any reasonable officer would have known it was constitutionally fatal." Id. at 938. Important to the court's analysis was that the warrant specifically identified "the places to be searched," it "specifically referred to [law enforcement's] affidavit," the "issuing judge signed the supporting affidavit" and that law enforcement "brought both the affidavit and the warrant . . . to supervise the search[.]" Id. at 938-39. These factors, in the Eighth Circuit's view, distinguished Szczerba from Groh. Id. at 939.

Three of these factors are clearly present in the current case. On its face, the search warrant specifically identified defendant's residence as the place to be searched. (Docket 54-1 at p. 17). The warrant specifically referred to the affidavit.[4] Id. The magistrate judge carefully reviewed and signed the affidavit. Id. at p. 14; see also Docket 106 at p. 20. The fourth factor, whether law enforcement brought both the affidavit and the warrant "to supervise the search," presents a murkier factual question. Szczerba, 897 F.3d at 939.

---

[4]The warrant in Szczerba "mentioned the affidavit only once in its averment of probable cause." 897 F.3d at 937. The Eighth Circuit held the warrant "specifically referred to [law enforcement's] affidavit," which was a part of its analysis distinguishing Groh. Id. at 938. The warrant here "specifically referred" to the affidavit in the same manner as the Szczerba warrant.

12

No law enforcement witness expressly testified to bringing a copy of the affidavit or its attachments to defendant's residence during the search.[5] Three of the five law enforcement witnesses at the evidentiary hearing, SA Patterson, SA Rasmussen, and SA Cooper, were present during the search. (Docket 88 at pp. 17-18, 69-70, 76, 84). SA Patterson and SA Rasmussen testified they reviewed the affidavit and attachments during a briefing held on April 10 in Kyle, prior to the execution of the warrant. Id. at pp. 17-18, 69-71. SA Cooper testified it is "standard practice" to make multiple copies of search warrant "documents" prior to executing a search but did not state whether he brought a copy of the affidavit and attachments to the search. Id. at p. 84.

SA Patterson served as "evidence custodian" during the search, meaning he catalogued the seized items. Id. at p. 25. He left a copy of the search warrant and an inventory of the seized items at defendant's residence. Id. at p. 26. He did not leave a copy of the affidavit or attachments. Id. at p. 27. In fact, SA Patterson testified it is "common practice that no defendant sees the affidavit or is left with the affidavit portion of a search warrant[.]" Id. at p. 34. SA Patterson and defendant's counsel engaged in the following colloquy regarding what documents were present during the search.

---

[5]In his objections, defendant states SA Patterson "testified that he had a copy of the Affidavit while executing the search." (Docket 109 at p. 2) (emphasis removed). Defendant does not cite to the evidentiary hearing transcript in support of this assertion. The court cannot find any statement by SA Patterson unambiguously asserting he brought the affidavit to the execution of the search warrant.

13

> Defendant's counsel: Just to clarify, Exhibit 13, you're stating, was what you brought to the scene, correct?
>
> SA Patterson: If I'm correct, Exhibit 13 is the search and seizure warrant, excuse me, a photograph of the search and seizure warrant as well as the yellow pages which document the items seized. That would not be the only thing that was brought to the warrant. I had in my possession other documents as they related to the case. They were not left at the residence. Only the search and seizure warrant and the DCI evidence inventory and receipt was left at the residence.

Id. at pp. 35-36.[6] SA Patterson did not specify what "other documents" were present with him during the search.

Given this factual record, the court finds law enforcement brought a copy of the affidavit and attachments to defendant's residence during the execution of the warrant. Law enforcement possessed and reviewed the affidavit and attachments at a briefing which took place in close temporal and geographic proximity to the execution of the search. SA Patterson then brought the search warrant itself, along with "other documents . . . related to the case," to defendant's residence. Id. at p. 36. The affidavit and attachments would logically be part of these "other documents," as SA Patterson and SA Rasmussen both testified to reviewing them prior to the search, particularly Attachment B. This conclusion is also bolstered by a comparison between Attachment B and the

---

[6]The transcript differs slightly from the quoted material. The court reviewed the audio recording of the evidentiary hearing and finds the quote given here to be an accurate transcription of SA Patterson's testimony. See Evidentiary Hearing Recording at 10:21:18 – 10:22:02.

14

evidence inventory. The items seized are all within the bounds of Attachment B's itemized list. Compare Docket 54-1 at p. 14 with id. at pp. 19-25. Law enforcement also considered itself bound by Attachment B. SA Rasmussen, for example, determined he was not permitted to download the contents of seized electronic devices on the basis of the magistrate judge's handwritten change to Attachment B. (Docket 88 at pp. 70-71).

Defendant's arguments to the contrary are unpersuasive. He first asserts the fact the affidavit and attachment were sealed distinguishes this case from Szczerba. (Docket 109 at pp. 3-4). Under Szczerba, the relevant question is whether law enforcement brought the documents to the search, not whether the documents were sealed. 897 F.3d at 939. The court found law enforcement brought the affidavit and attachments to the search and the fact the documents were sealed does not disturb that finding. He next argues if the warrant here is not facially deficient, no warrants are. (Docket 109 at p. 3). This argument also misses the mark. Warrants that lack particularity on their face and do not satisfy the criteria set forth in Szczerba are facially deficient and outside the reach of the good-faith exception. Finally, defendant argues if review by an AUSA entitles a deficient warrant to the good-faith exception, "then search warrants can no longer be contested[.]" Id. In the warrant particularity context, matching the specific Szczerba factors allows law enforcement to claim the good-faith exception. Review by an AUSA is not among those factors. Deficient search warrants not meeting the Szczerba bar are not only contestable,

but invalid. Simply because the warrant here is not invalid under Szczerba does not mean warrants could never be invalid for lack of particularity.

With the finding that law enforcement brought a copy of the affidavit and attachments to the search of defendant's residence, this case becomes indistinguishable from Szczerba. Because "the circumstances surrounding the issuance and execution of the search warrant" here parallel Szczerba, the court must "conclude the warrant was not so obviously deficient that any reasonable officer would have known that it was constitutionally fatal." 897 F.3d at 938. Groh's holding that the good-faith exception cannot apply in situations where a reasonable officer would know the warrant was facially deficient therefore does not control this case. Defendant's second objection is overruled, and the court adopts the R&R in full on this issue.

### 3. Third objection

Defendant's third objection attacks the application of the good-faith exception to this case. (Docket 109 at pp. 1-2). He claims this case is identical to Groh, requiring the court to invalidate the warrant and suppress the fruits of the execution. Id. at p. 2. In particular, defendant points to the fact that the affidavit and attachments were sealed in this case, as they were in Groh, as support for his contention that Groh should control the outcome of his motion. Id. He does not attempt to distinguish Szczerba in any other way.

As explained above, see supra Section III.B.2, the fact that the documents were sealed is irrelevant. The controlling question is whether the documents

16

accompanied law enforcement during the execution of the warrant at defendant's residence. The court found they did. This finding, along with the others made above, renders Szczerba, not Groh, the controlling precedent. Having completed the threshold inquiry of whether Groh prevents the application of the good-faith exception, the court must now determine whether that exception saves the evidence seized under this warrant.

No party objected to the magistrate judge's finding the warrant lacked particularity. (Docket 106 at p. 20). The court adopts this finding. The warrant was inexcusably deficient. SA Patterson and the reviewing AUSA "acted negligently in drafting the warrant." Szczerba, 897 F.3d at 939. Law enforcement—including any AUSAs who assisted in the preparation or execution of this warrant—should have recognized the warrant neither listed the items to be seized nor incorporated Attachment B.

However, Szczerba makes clear suppression is not an appropriate remedy for this particular type of Fourth Amendment violation. While law enforcement here, like the officers in Szczerba, "acted negligently," their "conduct certainly did not reflect the type of deliberate, reckless, or grossly negligent disregard for the Fourth Amendment that the exclusionary rule can effectively deter." Id. There is no indication the deficient warrant here was anything more than the product of careless, isolated error. Law enforcement understood the warrant to be limited in scope by Attachment B and executed the warrant with that

17

understanding. The items seized were authorized by Attachment B.[7] In fact, law enforcement sought a second search warrant to access the contents of seized electronic devices, which the magistrate judge forbade in Attachment B.

As in Szczerba, "application of the exclusionary rule . . . would not result in appreciable deterrence of police misconduct." Id. In fact, the mere threat of suppression appears to have achieved whatever deterrence is possible. SA Patterson testified a "new procedure" requiring warrants to incorporate attachments was adopted shortly after defendant filed his suppression motion. (Docket 88 at p. 12). Defendant does not identify what further deterrence might be achieved by suppression. When law enforcement "conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." Davis, 564 U.S. at 238 (internal citations and quotations omitted). The court concludes the good-faith exception applies here and, despite the lack of particularity in the warrant, suppression is not an appropriate remedy. Defendant's third objection is overruled. The court adopts the R&R in full on this point.

**IV. Conclusion**

The court overrules all of defendant's objections and adopts the R&R in full.[8] The warrant clearly lacked particularity but, under the interpretation of

---

[7]The one possible exception is a urine sample taken from the person of Cary Winter, who was present at defendant's residence during the search. (Docket 54-1 at p. 25). The evidence inventory states the sample was collected "under consent," with no further information. Id. Neither party challenges the search resulting in this sample and its validity is irrelevant to defendant's suppression motion.

18

Groh announced by the Eighth Circuit in Szczerba, the court must conclude the warrant was not so facially deficient as to be automatically deemed invalid and the good-faith exception saves the fruits of the warrant. Defendant did not specifically object to the magistrate judge's resolution of the other claims presented in his suppression motion and the court adopts the R&R on those matters.

**ORDER**

For the reasons given above it is,

ORDERED that defendant's objections to the magistrate judge's report and recommendations (Docket 109) are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 106) is adopted in full.

IT IS FURTHER ORDERED that defendant's suppression motion (Docket 45) is granted in part and denied in part. Any evidence derived from a urine sample taken from defendant on August 5, 2017, at the Adult Offender Facility in Pine Ridge, South Dakota, is suppressed. The motion is denied in all other respects.

---

[8]The magistrate judge found that the urine sample taken from defendant at the Adult Offender Facility in Pine Ridge, South Dakota, by OST police on August 5, 2017, should be suppressed. (Docket 106 at pp. 26-28). The government does not object to this holding. (Docket 112). The court consequently adopts it and will order the August 5 urine sample suppressed.

19

IT IS FURTHER ORDERED that a scheduling order will follow.

Dated February 25, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE